UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES GREENE,
Plaintiff,
v. Case No.:

CITY OF ORMOND BEACH, FLORIDA,
and MARIANNE MELE, individually,
Defendants.
_________________________________/

**COMPLAINT**

Plaintiff, JAMES GREENE, by and through undersigned counsel, sues Defendants CITY OF ORMOND BEACH, FLORIDA and MARIANNE MELE, individually, and alleges as follows:

**INTRODUCTION**

This case arises from an extraordinary attempt to transform a suicidal crisis inside a private home into a serious felony offense after the fact. Law enforcement responded to Plaintiff James Adam Greene's residence knowing they were dealing with a suicidal individual in crisis—not someone firing at police officers, neighbors, or members of the public. Greene was alone inside his residence, no officer witnessed him fire a weapon, no officer alleged that he fired toward them, no person was struck or identified as being within the trajectory of either alleged shot, and officers did not even determine where the bullets ultimately traveled or were recovered. Nevertheless, Defendant Marianne Mele subsequently attempted to recast the incident as a "wanton or malicious" shooting under section 790.19, Florida Statutes. That accusation was

unsupported by the known facts and controlling Florida law. The Florida Supreme Court has expressly held that firing a firearm within a building, standing alone, does not establish the indispensable wanton-or-malicious element. *State v. Kettell*, 980 So. 2d 1061, 1067–68 (Fla. 2008). What officers encountered was a suicidal individual in crisis; what they later characterized was a serious felony unsupported by facts establishing an essential element of the offense. Greene was nevertheless arrested and forced to defend against that accusation until the charge was ultimately dropped.

## PARTIES

1. Plaintiff JAMES GREENE is a natural person and was at all times material to this action a resident of Volusia County, Florida.
2. Defendant CITY OF ORMOND BEACH, FLORIDA is a Florida municipal corporation located in Volusia County, Florida.
3. The City operates, controls, and is responsible for the Ormond Beach Police Department ("OBPD").
4. Defendant MARIANNE MELE was at all material times a sworn law-enforcement officer employed by OBPD.
5. At all material times, Defendant Mele acted under color of state law and pursuant to authority granted to her by the City and the State of Florida.
6. At all material times, Defendant Mele was acting within the course and scope of her employment with the City.
7. Defendant Mele is sued in her individual capacity.

## JURISDICTION AND VENUE

8. This action arises under the Constitution and laws of the United States, including the Fourth Amendment and 42 U.S.C. § 1983.
9. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.
10. This Court has supplemental jurisdiction over Plaintiff's related Florida-law claim pursuant to 28 U.S.C. § 1367 because that claim arises from the same nucleus of operative facts.
11. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred in Volusia County, Florida.
12. Volusia County lies within the Orlando Division of the Middle District of Florida.

## FACTUAL ALLEGATIONS

13. On or about May 8, 2025, OBPD officers responded to Greene's residence following a report concerning Greene's welfare.
14. The incident was initially reported to law enforcement as involving a potentially suicidal person.
15. Defendant Mele thereafter prepared and swore to an OBPD affidavit accusing Greene of violating section 790.19, Florida Statutes.
16. The affidavit alleged that Greene made disturbing and threatening statements during the incident.
17. The affidavit further alleged that Greene fired approximately two rounds through the ceiling of his residence.

18. The existence of alarming statements, however, did not relieve law enforcement of its obligation to possess probable cause for **each essential element of the particular felony offense for which Greene was arrested**.
19. Section 790.19, Florida Statutes, does not criminalize the mere firing of a firearm inside a building.
20. Rather, section 790.19 applies when a person **"wantonly or maliciously"** shoots at, within, or into a public or private building.
21. Accordingly, the offense contains separate and distinct elements.
22. First, the accused must shoot a firearm.
23. Second, the firearm must be shot at, within, or into a public or private building.
24. Third, the act must be committed **wantonly or maliciously**.
25. The third element is independent, substantive, and indispensable.
26. It cannot lawfully be inferred solely from the existence of the first two elements.

## <u>CONTROLLING FLORIDA LAW</u>

27. Long before Greene's arrest, the Florida Supreme Court directly addressed this issue in *State v. Kettell*, 980 So. 2d 1061 (Fla. 2008).
28. In *Kettell*, neighbors reported hearing gunshots coming from the defendant's apartment.
29. Police found the defendant alone inside the apartment.
30. Officers smelled gunpowder and discovered a revolver, ammunition, bullet holes, and bullet fragments.

31. The evidence therefore established that shots had been fired inside the building.

32. Nevertheless, the Florida Supreme Court held that the act of shooting within a building, standing alone, was insufficient to establish a violation of section 790.19.

33. The Court explained that the statute independently requires proof that the shooting was committed wantonly or maliciously.

34. Specifically, "wantonly" requires conscious and intentional conduct undertaken with reckless indifference to consequences and with knowledge that damage is likely to be done to some person. *Id.* at 1067–68.

35. "Maliciously" requires wrongful and intentional conduct, without legal justification or excuse, together with knowledge that injury or damage will or may be caused to another person or the property of another person. *Id.*

36. The Florida Supreme Court therefore expressly rejected the proposition that the mens rea required by section 790.19 automatically arises merely because a firearm was intentionally discharged at, within, or into a building.

37. At the time of Greene's arrest, *Kettell* had been binding Florida Supreme Court precedent for approximately seventeen years.

**<u>THE FACTS DID NOT ESTABLISH WANTON OR MALICIOUS CONDUCT</u>**

38. Defendant Mele's affidavit alleged that Greene fired approximately two shots through the ceiling of his own residence.

39. The officers possessed no information that either projectile struck any person.

40. The officers possessed no information that Greene fired either projectile toward any identifiable person.
41. The officers possessed no information that any person occupied or stood above the trajectory of either alleged shot.
42. The officers possessed no information that either projectile exited Greene's residence.
43. The officers possessed no information that either projectile entered an adjoining residence or other structure.
44. The officers possessed no information identifying where either projectile ultimately traveled.
45. The officers possessed no information identifying where either projectile was recovered.
46. The officers possessed no information that either projectile struck property belonging to another person.
47. The officers possessed no information that either projectile damaged property belonging to another person.
48. The officers possessed no trajectory evidence, impact evidence, projectile recovery, or other objective physical evidence demonstrating that Greene knew the alleged shots were likely to cause injury or damage to another person or another person's property.
49. Although the affidavit attributed disturbing and threatening statements to Greene, those statements did not themselves establish that the **actual shots**

**through the ceiling** were fired with the specific wanton or malicious state of mind required by section 790.19.

50. Threatening speech and the discharge of a firearm are distinct facts.
51. The existence of one does not automatically establish the statutory mens rea accompanying the other.
52. Law enforcement was therefore required to possess facts connecting the actual discharge of the firearm to the wanton or malicious conduct required by the statute.
53. No such facts existed.
54. Instead, the affidavit recited the statutory phrase "wantonly or maliciously" while relying upon Greene's alleged discharge of approximately two shots through the ceiling.
55. A conclusory repetition of statutory language does not itself supply facts establishing probable cause.
56. Probable cause must arise from reasonably trustworthy facts supporting the elements of the **crime actually charged**.
57. Defendant Mele could not constitutionally transform a legal conclusion into factual evidence merely by inserting the words "wantonly or maliciously" into the charging affidavit.
58. Nor could Defendant Mele infer the missing mens rea solely from the fact that Greene allegedly discharged a firearm inside his residence.
59. That is precisely the inference the Florida Supreme Court rejected in *Kettell*.

60. The distinction was clear: the shooting itself constituted one part of the offense; whether that shooting was wanton or malicious constituted another.

61. Defendant Mele possessed allegations regarding the former but lacked reasonably trustworthy facts sufficient to establish the latter.

**ABSENCE OF PROBABLE CAUSE AND ARGUABLE PROBABLE CAUSE**

62. Defendant Mele lacked probable cause to cause Greene's arrest for violation of section 790.19.

63. Defendant Mele likewise lacked arguable probable cause.

64. The facts known to law enforcement did not establish the statute's indispensable wanton-or-malicious element.

65. *State v. Kettell* had expressly held that intentionally discharging a firearm at, within, or into a building does not, standing alone, establish that element.

66. Here, although officers allegedly heard approximately two shots fired through Greene's ceiling, they possessed no information that Greene fired toward any person, that any person occupied or stood above the trajectory of the shots, that either projectile exited the residence, or that either projectile struck or threatened property belonging to another.

67. Those missing facts were material because wantonness requires knowledge that damage is likely to be done to some person, while malicious conduct requires knowledge that injury or damage will or may be caused to another person or another person's property. *Kettell*, 980 So. 2d at 1067–68.

68. The officers could not constitutionally substitute the mere fact of an intentional indoor firearm discharge for the additional mens rea Florida law expressly requires.

69. Nor could law enforcement manufacture probable cause through the conclusory recitation of the statutory phrase "wantonly or maliciously."

70. The existence of alarming statements attributed to Greene did not relieve law enforcement of its obligation to establish probable cause for the **particular offense actually charged**.

71. Because *Kettell* had long since rejected the proposition that the shooting itself establishes the requisite mental state, no objectively reasonable officer could conclude, without additional facts connecting the actual discharge of the firearm to the statutorily required wanton or malicious conduct, that probable cause existed for a violation of section 790.19.

72. Defendant Mele nevertheless caused criminal process to be initiated against Greene.

73. Greene was thereafter arrested and deprived of his liberty.

74. Defendant Mele therefore caused Greene to suffer an unreasonable seizure unsupported by probable cause or arguable probable cause.

## TERMINATION OF THE CRIMINAL PROCEEDING

75. Greene was required to defend himself against the felony charge initiated as a result of Defendant Mele's affidavit.

76. Greene did not plead guilty to violating section 790.19.

77. Greene was not convicted of violating section 790.19.

78. The charge against Greene was ultimately dropped.

79. The criminal proceeding therefore terminated without a conviction against Greene.

80. By that time, Greene had already endured the arrest, deprivation of liberty, expense, humiliation, public stigma, emotional distress, and other consequences associated with being accused of a serious felony offense.

## DAMAGES

81. As a direct and proximate result of Defendants' acts and omissions, Greene suffered deprivation of his constitutional rights.

82. Greene suffered loss of liberty.

83. Greene suffered humiliation and embarrassment.

84. Greene suffered emotional distress and mental anguish.

85. Greene suffered injury to his reputation.

86. Greene incurred legal expenses and other monetary losses associated with defending against the criminal charge.

87. Greene suffered inconvenience and substantial disruption to his personal life.

88. Greene suffered additional damages to be established through discovery and at trial.

## COUNT I – 42 U.S.C. § 1983
## FOURTH AMENDMENT – FALSE ARREST AND UNREASONABLE SEIZURE
## Against Defendant Marianne Mele

89. Plaintiff realleges and incorporates paragraphs 1 through 88 as though fully set forth herein.

90. Defendant Mele acted under color of state law.
91. The Fourth Amendment protects individuals against unreasonable seizures, including arrests unsupported by probable cause.
92. Greene was seized within the meaning of the Fourth Amendment when he was arrested and deprived of his liberty.
93. Defendant Mele caused that seizure by initiating criminal process against Greene for violation of section 790.19.
94. Probable cause required reasonably trustworthy facts sufficient to cause an objectively reasonable officer to believe Greene committed the offense for which he was arrested.
95. That required facts supporting each indispensable element of section 790.19, including that Greene's alleged shooting was committed wantonly or maliciously.
96. Defendant Mele lacked such facts.
97. The Florida Supreme Court had expressly held in *State v. Kettell* that proof of firing a firearm at, within, or into a building is insufficient, standing alone, to establish the wanton-or-malicious element.
98. Defendant Mele was not free to disregard that element.
99. Defendant Mele was not free to substitute the fact of the shooting for evidence supporting the required mental state.
100. Defendant Mele was not free to cure the absence of supporting facts by merely repeating the statutory phrase "wantonly or maliciously."

101. Although the affidavit attributed alarming statements to Greene, those statements did not eliminate the obligation to possess facts establishing that the **actual discharge of the firearm** satisfied the mens rea required by section 790.19.

102. The officers possessed no information that either shot was directed toward an identifiable person.

103. The officers possessed no information that any person was located above or within the trajectory of the shots.

104. The officers possessed no information that either projectile left Greene's residence.

105. The officers possessed no information that either projectile entered another person's property.

106. The officers possessed no information that either projectile caused injury or property damage.

107. The officers possessed no objective facts demonstrating that Greene knew his shots were likely to cause injury or damage to another person or another person's property.

108. Defendant Mele therefore lacked probable cause to cause Greene's arrest under section 790.19.

109. Defendant Mele likewise lacked arguable probable cause because no objectively reasonable officer applying the Florida Supreme Court's binding construction of section 790.19 in *Kettell* could treat proof of the shooting itself

as automatically satisfying the statute's separate wanton-or-malicious requirement.

110. Defendant Mele's conduct caused Greene to suffer an unreasonable seizure in violation of the Fourth Amendment.

111. Defendant Mele's conduct was intentional, reckless, and undertaken in disregard of Greene's federally protected rights.

112. As a direct and proximate result of Defendant Mele's unconstitutional conduct, Greene sustained the damages alleged herein.

**WHEREFORE**, Plaintiff **JAMES GREENE** demands judgment against Defendant **MARIANNE MELE**, individually, for compensatory damages, nominal damages, punitive damages as permitted by federal law, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, taxable costs, prejudgment and post-judgment interest as allowed by law, and such other and further relief as this Court deems just and proper.

## COUNT II – FALSE ARREST AND FALSE IMPRISONMENT UNDER FLORIDA LAW
## Against Defendant City of Ormond Beach

113. Plaintiff realleges and incorporates paragraphs 1 through 88 as though fully set forth herein.

114. At all material times, Defendant Mele and the OBPD officers involved in Greene's arrest and detention were employees and agents of the City.

115. Those officers acted within the course and scope of their employment and law-enforcement duties.

116. Greene was intentionally restrained and deprived of his liberty.

117. Greene was conscious of that restraint.

118. Greene did not consent to that restraint.

119. Greene's arrest and resulting detention were unlawful because law enforcement lacked probable cause to arrest him for violation of section 790.19.

120. The facts known to the officers did not establish that Greene's alleged shooting was committed wantonly or maliciously.

121. Under *State v. Kettell*, the act of firing the firearm itself was insufficient to supply that missing element.

122. The officers possessed no facts demonstrating that the alleged shots were directed toward another person, endangered a person positioned within their trajectory, entered another person's property, or damaged another person's property.

123. Because the officers lacked probable cause to arrest Greene for the charged offense, Greene's resulting detention was unlawful.

124. At all relevant times, the officers were acting within the course and scope of their employment with the City.

125. The City is liable, subject to the provisions and limitations of section 768.28, Florida Statutes, for tortious acts committed by its employees while acting within the course and scope of their employment.

126. Plaintiff has satisfied all applicable conditions precedent to maintaining this claim against the City, or such conditions have otherwise been waived or excused.

127. As a direct and proximate result of the wrongful acts of the City's officers and employees, Greene suffered loss of liberty, emotional distress, humiliation, embarrassment, reputational injury, inconvenience, monetary loss, and other damages.

**WHEREFORE**, Plaintiff JAMES GREENE demands judgment against Defendant CITY OF ORMOND BEACH, FLORIDA, for compensatory damages to the extent permitted by Florida law, taxable costs, prejudgment and post-judgment interest as allowed by law, and such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all claims and issues so triable.

Date: September 4, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

*/s/ Gavin B. Rollins*
GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892